IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

**MELISSA BETH MYERS,**

 Plaintiff,

v.                  Civil Action No. 1:17-cv-1999

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

 Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Complaint and Motion for Remand (ECF No. 12) and Defendant's Brief in Support of Defendant's Decision (ECF No. 13). This is an action seeking remand for further explanation of the decision of the Commissioner of Social Security denying Claimant's application for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act for further explanation (ECF No. 12).

Background

Claimant, Melissa Beth Myers, filed applications for DIB and SSI on January 3, 2013. Claimant alleged disability beginning January 2, 2013. The claims were denied initially on October 1, 2013, and upon reconsideration on December 11, 2013. On February 11, 2014, Claimant filed a request for hearing before an Administrative Law Judge. A video hearing was held on September 29, 2015. Claimant appeared in Mt. Hope, West Virginia, and the Administrative Law Judge presided over the video hearing from Roanoke, Virginia. The Administrative Law Judge (ALJ) denied Claimant's applications on December 1, 2015. On

1

approximately January 29, 2016, Claimant filed a Request for Review of the Decision with the Appeals Council (Tr. at 8).  The Appeals Council (AC) denied Claimant's request for review on January 27, 2017 (Tr. at 6 - 9).  Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520 and 416.920 (2017).  If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a) and 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b) and 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c) and 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* §§ 404.1520(d) and 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* §§ 404.1520(e) and 416.920(e).  By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms

2

of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f) and 416.920(f) (2017).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since January 3, 2013, the application date (Tr. at 16). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic obstructive pulmonary disease (COPD)/asthma, diabetes mellitus, arthralgia in the knees and back disorder. (*Id.*)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 17).  The ALJ then found that Claimant has a residual functional capacity for medium work[1] (Tr. at 18). The ALJ held that Claimant has no past relevant work; therefore, transferability of job skills is not an issue (Tr. at 20, 21). The ALJ held that Claimant could perform the jobs of a packer, warehouse worker and bagger (Tr. at 21).  The ALJ denied Claimant's applications for disability on December 1, 2015 (Tr. at 22).

---

[1] The ALJ found that Claimant is able to frequently lift and carry 25 pounds, occasionally lift and carry 50 pounds, sit for 6 hours in an 8-hour period and stand and/or walk for 6 hours in an 8-hour period (Tr. at 18).  Claimant is capable of frequent balancing, kneeling, crawling, stooping, crouching and climbing of ramps and stairs, but she is limited to occasional climbing of ladders, ropes and scaffolds.  Claimant must avoid concentrated exposure to hazardous machinery, working at unprotected heights, and working on vibrating surfaces, and she must avoid even moderate exposure to pulmonary irritants and extremes of heat and humidity and avoid commercial fryers with high heat.  (*Id.*)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on July 3, 1978, and was 37 years old on the date of the hearing (Tr. at 33). Claimant last completed the 11th grade. Claimant lives with her daughter and her 4 year old grandson (Tr. at 43). On the date of the hearing, Claimant's son was 12 years old. Claimant's mother "helped" raise her son and he stays frequently at Claimant's mother's house (Tr. at 35-36). Claimaint's mother and aunt help taking Claimant's son to functions (Tr. at 36).

## The Medical Record

The medical record has been adopted, as set out in the Claimant's Brief and Defendant's Brief, to the extent as follows:

> Claimant underwent treatment by Dr. Durham, a pulmonologist, every three to six months during the relevant period from her alleged onset date of January 2, 2013, until December 1 2015, the date of the ALJ's decision. During this period, Dr. Durham noted that Claimant had a history of COPD, diabetes mellitus, venous insufficiency, occasional coughing, nausea, vomiting, diarrhea, hematuria, dysuria, dysphagia, reflux, recurrent chest infections, oral thrush, and neuropathy (Tr. at 374, 377, 380, 383, 386, 389, 393). On examination, Claimant had decreased breath sounds without rales, rhonchi, or wheezes; no percussion changes; normal chest excursions; and normal anterior-posterior diameter (Tr. at 375, 378, 381, 384, 387, 390, 394). Dr. Durham diagnosed dyspnea with environmental exposure, dyspnea at rest and with exertion, chronic bronchitis, emphysema, Type 2 diabetes mellitus, backache, polyneuropathy, and fatigue (Tr. at 376, 378-79, 383, 385, 388, 391, 394-95). He prescribed various medications including Diflucan, Dulera, Spiriva, Nystatin, Cymbalta, Metformin, Albuterol, and Ventolin and recommended that Claimant lose weight and stop smoking (Tr. at 376, 379, 382, 385, 388, 391, 395).
>
> On January 22, 2013, Claimant presented to Beckley Pain Clinic complaining of pain in her shoulder, lower back, legs, and hips that rated as a six on a ten-point scale (Tr. at 292). Claimant reported walking for exercise (Tr. at 292). Narcisco Rodriguez, M.D., prescribed Zanaflex, Neurontin, and Oxycodone and recommended that Claimant walk and do stretching and range of motion exercises (Tr. at 293).
>
> On February 20, 2013, Claimant returned to Beckley Pain Clinic and complained of pain in her shoulder, lower back, hips, and legs that rated as a four on a ten-point scale (Tr. at 289). Claimant reported walking for exercise (Tr. at 290). On examination, Claimant had normal sensation, normal muscle strength, normal deep tendon reflexes, a normal ability to walk, and normal range of motion of her extremities (Tr. at 291).
>
> On May 24, 2013, an x-ray of Claimant's lumbar spine revealed possible pars defects at the L5 level with some osteophytic lipping (Tr. at 324).

5

On July 17, 2013, Claimant underwent a pulmonary function study that revealed a moderate obstructive process with improvement with bronchodilators; mild hyperinflation with severe air trapping; normal airway conductance; and well preserved diffusion capacity (Tr. at 319). Claimant had a pre-bronchodilator FVC reading of 2.96 L, a pre-bronchodilator FEV reading of 2.58 L; and a pre-bronchodilator DLCO reading of 18.5. (*Id.*) On the same date, Claimant also underwent a chest CT that revealed hyperinflation of the lungs with an increase in the markings suggesting COPD (Tr. at 322, 397).

On September 28, 2013, Narendra Parikshak, M.D., a state agency physician, reviewed the evidence of record and completed an assessment of Claimant's physical residual functional capacity (Tr. at 62-64). Dr. Parikshak determined that Claimant could lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about six hours during an eight-hour workday, and sit about six hours during an eight-hour workday (Tr. at 63). Dr. Parikshak also found Claimant could frequently climb ramps and stairs, balance, stoop, crouch, and crawl and occasionally climb ladders, ropes, and scaffolds. (*Id.*) In addition, Dr. Parikshak determined that Claimant needed to avoid concentrated exposure to extreme heat or cold, vibrations, and hazards and even moderate exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. at 64).

On December 10, 2013, Uma Reddy, M.D., a second state agency physician, reviewed the evidence of record and affirmed Dr. Parikshak's assessment of Claimant's residual functional capacity (Tr. at 72-74).

On January 14, 2014, a CT of Claimant's chest revealed emphysema and bronchiectasis (Tr. at 396, 494). During the period from February 2014 through February 2015, Claimant presented to MedExpress, a walk-in medical center, on six occasions (Tr. at 445-67). Claimant sought treatment for various maladies including congestion, bronchitis, eye redness, COPD exacerbation, and an abscess (Tr. at 445, 448, 450,456, 460, 463, 466). At discharge, the medical professionals who treated Claimant recommended that she follow up with her primary care physician (Tr. at 446, 450, 453, 460, 463, 466).

On July 17, 2014, a magnetic resonance imaging (MRI) study of Claimant's thoracic spine revealed disc herniation at the T5-6, T7-8, and T8-9 levels (Tr. at 496). On the same day, an MRI study of her lumbar spine revealed no evidence of disc herniation (Tr. at 498) and an MRI study of her cervical spine revealed no acute abnormality (Tr. at 499).

On August 11, 2015, in a letter beginning with the salutation,

6

> "To Whom It May Concern," Dr. Durham stated the following:
> This is a letter of introduction of Melissa Holliday. This is a 37-year-old female with a baseline history of COPD/emphysema. This has been documented on previous pulmonary function studies that were done in July 2014 with moderate obstructive disease, mild hyperinflation and severe air trapping, and a diffusion capacity that was 87% predicted. CT scan of the chest done in January 2014 indicates emphysematous changes, bronchiectasis. This patient has chronic respiratory symptoms with dyspnea and dyspnea on exertion. Based on her CT findings and pulmonary function study findings this patient would be considered to be disabled from a pulmonary standpoint (Tr. at 346).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ's decision is not supported by the evidence of record (ECF No. 12). Claimant argues that "the employment listed by the vocational expert and embraced by the presiding administrative law judge was/is overbroad." (*Id.*) In response, Defendant asserts that Claimant has not proven that she is disabled under the Social Security Act (ECF No. 13). Defendant avers that substantial evidence supports the ALJ's decision that Claimant was not disabled. (*Id.*)

Weight Afforded Medical Opinions

For claims filed before March 27, 2017,[2] the standards for evaluating medical opinion evidence are set forth in 20 C.F.R. § 404.1527. That regulation defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *See* 20 C.F.R. § 404.1527(a)(1). For purposes of the regulation, an "acceptable medical source" includes a licensed physician or psychologist. *Id.* § 404.1502(a). The regulation provides that the ALJ "will evaluate every medical opinion" presented to him, "[r]egardless of its source." *Id.* § 404.1527(c). Generally, however,

---

[2] For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.

7

more weight is given "to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." *Id.* § 404.1527(c)(1).

Significantly, the regulation embodies a treating physician rule that accords the greatest weight — controlling weight — to the opinions of the claimant's "treating sources." *See* 20 C.F.R. § 404.1527(c)(2). The regulation defines a "treating source" as "your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." *Id.* § 404.1527(a)(2). The regulation explains:

> Generally, [the ALJ gives] more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *Id.* § 404.1527(c)(2).

The regulation promises that the ALJ "will always give good reasons in [his] decision for the weight [he gives] your treating source's medical opinion." *Id.*

Under the regulation's treating physician rule, controlling weight is to be accorded to "a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s)" if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." *See* 20 C.F.R. § 404.1527(c)(2). When a treating source's medical opinion is not given controlling weight, five factors are utilized to determine what lesser weight should instead be accorded to the opinion. The first two of those factors are specific to treating sources:

- "Length of the treatment relationship and the frequency of examination," *see* 20 C.F.R. § 404.1527(c)(2)(i); and

> ● "Nature and extent of the treatment relationship," *id.* § 404.1527(c)(2)(ii).

The other three factors are used to determine the weight to be given to any medical opinion, whether from a treating or nontreating source:

> ● "Supportability" in the form of the quality of the explanation provided for the medical opinion and the amount of relevant evidence — "particularly medical signs and laboratory findings" — substantiating it, *id.* § 404.1527(c)(3);
> ● "Consistency," meaning how consistent the "medical opinion is with the record as a whole," *id.* § 404.1527(c)(4); and
> ● "Specialization," favoring "the medical opinion of a specialist about medical issues related to his or her area of specialty," *id.* § 404.1527(c)(5).

Additionally, any other factors "which tend to support or contradict the medical opinion" are to be considered. *Id.* § 404.1527(c)(6).

## Discussion

The ALJ discussed the medical evidence of record that reflects Claimant's history of treatment at Beckley Pain Clinic and by Claimant's treating physician Dr. Durham.

The ALJ held:

> [A]fter consideration of all evidence of record, and in the absence of a more restrictive medical assessment by a treating or examining physician, this Administrative Law Judge accords great weight to the consistent and well-supported opinions of the reviewing physicians at the initial and reconsideration levels (Exhibits 1A and 3A) and find that limitations imposed by impairments would not prevent the claimant from frequently lifting and carrying 25 pounds, occasionally lift and carrying 50 pounds, sitting for 6 hours in an 8-hour period, or standing and/or walking for 6 hours in an 8-hour period. According great weight to the additional limitations imposed by the reviewing physicians, this Administrative Law Judge finds that the claimant is capable of frequent balancing, kneeling, crawling, stooping, crouching, and climbing of ramps and stairs, but she is limited to occasional climbing of ladders, ropes and scaffolds. The claimant must avoid concentrated exposure to

9

> hazardous machinery, working at unprotected heights, and working on vibrating surfaces, and she must avoid even moderate exposure to pulmonary irritants and extremes of heat and humidity (Tr. at 20).

The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

The Fourth Circuit has held:

> We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." See, e.g., *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir.1980); *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979); *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir.1977). As we said in Arnold:
>
>> The courts ... face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's "duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." 567 F.2d at 259.

In the present case, the ALJ did not indicate the weight given to Claimant's treating physician Dr. Durham. Additionally, the ALJ did not identify which reviewing physicians' opinions he gave great weight. The ALJ did not discuss each of the reviewing physicians' medical assessments or what the reviewing physicians relied upon in the evidence of record to support their medical assessments of Claimant. As the ALJ gave their opinions great weight, explanation of their content is necessary. The undersigned respectfully recommends that the District Judge find

10

that the ALJ did not provide an explanation of the reviewing physicians' opinions to which he gave great weight. As such, the analysis is incomplete and precludes meaningful review.

## Conclusion

For the reasons provided above, the undersigned respectfully recommends that the District Judge find that ALJ's lack of explanation for the weight afforded to the reviewing physicians' opinions and the failure to indicate weight given to the treating physician's opinion renders the analysis incomplete and precludes meaningful review. Accordingly, the undersigned suggests that District Judge finds that the ALJ's decision is not supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 12), **DENY** the Commissioner's Brief in Support of the Defendant's Decision (ECF No. 13), **REVERSE** the final decision of the Commissioner and **REMAND** this case for further proceedings pursuant to sentence four of 42 § U.S.C. § 405(g) and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Faber and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: February 28, 2018

Dwane L. Tinsley
United States Magistrate Judge